## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-62395-SINGHAL/VALLE

DAWN VAN DER STEEG, on behalf of himself
and all others similarly situated,

      Plaintiff,

      v.

WALMART INC.,

      Defendant.

_____/

## DEFENDANT WALMART INC.'S MOTION TO DISMISS CLASS ACTION COMPLAINT AND MEMORANDUM IN SUPPORT

Defendant Walmart Inc. ("Walmart") moves to dismiss Plaintiff Dawn Van Der Steeg's Class Action Complaint, ECF. No. 1 ("Complaint"), for failure to state a claim under Rule 12(b)(6), or, in the alternative, to dismiss or strike Plaintiff's nationwide class allegations under Rules 12(b)(1), 23(d)(1)(D) and 12(f).

### INTRODUCTION

This case is an opportunistic attempt to profit from a third-party petition submitted to the Food and Drug Administration ("FDA") raising concerns that *some* spray antiperspirant products may contain benzene. Plaintiff claims she bought a cannister of Equate Dry Spray antiperspirant in February 2021. Nine months later, a third party submitted a citizen petition to the FDA, describing testing on various spray antiperspirant products, one of which was Equate Dry Spray with a "Cucumber" scent from a specific lot number. The report showed significant variability across products, batches, and scents, with many products and scents containing no benzene. The petition, however, reported that one cannister of Equate Dry Spray Cucumber, from a specific lot

number, contained detectible levels of benzene. Ignoring these limitations, Plaintiff sued less than three weeks later, purporting to represent everyone in the country who bought *any* Equate antiperspirant spray product. Plaintiff's claims should be dismissed for six primary reasons.

**First**, Plaintiff does not allege facts plausibly showing she bought a product containing benzene. Instead, she alleges only that she bought a cannister of "Equate Dry Spray"—scent and lot number unspecified—in February 2021 and asserts in conclusory fashion that it contains benzene. Yet her Complaint is based on and incorporates a third-party petition submitted to FDA reporting that only a single cannister of "Cucumber" Equate Dry Spray had detectible levels of benzene. The petition specifically warns against making generalizations about all batches or scents of a product because there are "significant batch-to-batch variations" in benzene levels, such that "many batches of body spray contain no detectible benzene level." Given these limitations, Plaintiff's generic allegation that she bought an unspecified scent of Equate Dry Spray from an unspecified lot does not plausibly state any claim for relief.

**Second**, **Counts I and II** asserting express and implied warranty claims fail because Plaintiff's allegations show she did not provide the required pre-suit notice. The "true and correct" copy of the notice letter attached to the Complaint is dated the same day Plaintiff filed this lawsuit and was delivered to Walmart a week after the summons and Complaint were served, which is not sufficient *pre*-suit notice.

**Third**, **Count III** pleads a claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") based on (i) deceptive and unfair acts, and (ii) alleged violations of the Food Drug and Cosmetic Act's ("FDCA's") prohibition of "adulterated" drugs. Yet Plaintiff does not allege any specific misrepresentation, does not allege facts showing Walmart was aware the Equate

product Plaintiff bought contained benzene and does not allege facts showing that the product was "adulterated" under the meaning of the FDCA. Thus, the FDUTPA claim fails.

**Fourth**, **Count IV** for fraud fails because Plaintiff fails to meet Rule 9(b)'s heightened pleading standards. She does not allege any actionable misrepresentation, and she does not allege facts showing that Walmart knew that the product Plaintiff claims to have bought contained benzene.

**Fifth, Count V** for unjust enrichment is barred because she alleges an adequate legal remedy (FDUTPA and warranty claims) based on the same alleged conduct.

**Finally,** the Court should strike the nationwide class claim. Plaintiff is a Florida resident who claims to have bought Equate Dry Spray in Florida. She has no standing to bring claims under any law other than Florida, and thus cannot represent members of a putative nationwide class whose claims arise, if at all, under the laws of their home states.

## PLAINTIFF'S ALLEGATIONS

Walmart sells Equate Dry Spray antiperspirants, including one with a Cucumber scent. (Compl. ¶ 1.) Plaintiff claims that, in February 2021, she bought a cannister of Equate Dry Spray but does not allege the scent, or the batch or lot number, although this information is printed on the cannister she claims to have bought. (Compl. ¶ 34.) Nine months later, on November 3, 2021, a third party, Valisure, released a "Citizen Petition on benzene in Body Spray Products" ("Valisure Petition"). (Compl. ¶ 7 & ¶ 7 n.7.) The complete Petition is publicly available, and, while Walmart disputes the findings in the Petition, Plaintiff relies on it and incorporated it into her Complaint. (*See* Compl. ¶¶ 7-9, 19, 7 n.7.)[1] According to Valisure, it "analyzed 108 unique batches from 30

---

[1] "In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference." *Gill v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (affirming dismissal of claim based on affidavit attached to the complaint). "[A] document need not be physically attached to a pleading to be

brands of body spray products . . . . In summary, 59 product batches had detectible levels of benzene, 14 contained benzene in average concentrations between .10 ppm and 2.00 ppm and 24 contained over 2.00 ppm." (Valisure Petition at 12.) Forty-nine samples contained nothing. (*Id*. at 16-17.) As part of the testing, Valisure appears to have heated the body sprays to temperatures exceeding 175 degrees Celsius, or more than 340 degrees Fahrenheit (*id.* at 11), temperatures sufficient to degrade components of the spray into constituents like benzene, thus creating the substance for which they were testing.

According to Valisure, its testing also showed significant variability. The same batch of the same product tested had differing levels of benzene, different batches of the same product had different levels, and the results also differed by scents, with some containing detectable levels and others having no detectible level of benzene. (*Id.* at 12-18.) Given these varied results, Valisure provided the following disclaimer: "As indicated in Tables 2-5, there is significant batch-to-batch variation in benzene content, but many batches of body spray contain no detectable benzene and thus recalls should not overly burden the distribution chain or impact the availability of body spray." (*Id.* at 18.)

Of the 108 batches tested, Valisure appears to have tested a single batch of Equate Dry Spray, Cucumber, Lot 1E05, and found that the average ppm of benzene was 6.15 ppm. (*Id*. at 12.) A different laboratory tested the *same* batch of Equate Dry Spray, Cucumber, but found that the detectible level was almost half: 3.21 ppm. (*Id*.) The Valisure Petition does not report that any

---

incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]" *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Under the centrality requirement, the referenced document must be central to the plaintiff's claim. *Id*. Plaintiff cites the Valisure Petition, quotes from it, and it is her singular basis for claiming there is benzene in Defendant's products. (*See* Compl. ¶¶ 7-9, 19, 7 n.7.)

other batch of Equate Dry Spray, Cucumber contained benzene, nor does it report that any other Equate Dry Spray scent contained benzene.

Ignoring this variability, Plaintiff alleges that the unidentified Equate Dry Spray she bought "was contaminated with benzene" and thus "misbranded." (Compl. ¶ 34.) She claims she served Walmart with a pre-suit notice letter on November 15, 2021 (Compl. ¶¶ 54, 65), but the letter is dated November 23, 2021, (Compl., Ex. 1) and was delivered to Walmart on December 1, 2021. That letter states that Plaintiff bought Equate Dry Spray, and that the product was "defective" because, based on the Valisure Petition, it contained 6.15 ppm of benzene. (Compl. Ex. 1 at 1.) The same day she sent the letter and more than a week before Walmart received it, Plaintiff sued, alleging claims for breach of express warranty (Count I), breach of implied warranty (Count II), violation of FDUTPA (Count III), fraud (Count IV), and unjust enrichment (Count V). Plaintiff purports to assert the warranty, fraud, and unjust enrichment claims on behalf of a putative nationwide class. (Compl. ¶¶ 39, 51, 56, 81, 91.)

## LEGAL STANDARDS

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff cannot articulate "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and rise above the level of speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678)); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."). Further, "a 'litigant may be defeated by his own evidence, the pleader by his own exhibits' when 'he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them.'" *Gill*, 941 F.3d at 511-12 (11th Cir. 2019) (quoting

*Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)); *accord Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1966) ("This complaint is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more.").

When, as here, a complaint alleges "fraud," Plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Meridian Tr. Co. v. Batista*, No. 17-cv-23051, 2018 WL 4760277, at *3 (S.D. Fla. Sept. 30, 2018). "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-cv-22153-JEM, 2011 WL 4434891, at *2 (S.D. Fla. Sept. 23, 2011) (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). "Thus, under Rule 9(b) a plaintiff must plead the 'who, what, when, where, and how of the allegedly false statements.'" *Id.* (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

<u>**ARGUMENT**</u>

I.      **ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6).**

      A.      **Plaintiff's Failure to Allege Facts Showing What She Bought or That It Contained Benzene is Fatal to All Her Claims.**

All Plaintiff's claims presume that, in February 2021, she bought an Equate Dry Spray product supposedly contaminated with benzene. Her warranty claims are based on the allegation

that the cannister she bought contained benzene. (Compl. ¶¶ 52-53, 57-58.) Her FDUTPA and fraud claims are based on the allegation that what she bought contained but did not list benzene as an ingredient. (Compl. ¶¶ 73-74, 84-86.) And her unjust enrichment claim is based on the same allegation. (Compl. ¶¶ 90, 92, 94.)

Yet Plaintiff does not allege *what* she bought, alleging only that it was "Equate Dry Spray," without specifying the scent or the UPC, batch, or lot number. (Compl. ¶ 34.)[2] Plaintiff repeatedly references the Valisure Petition as support for her supposition that what she bought contained benzene, but that study undercuts her position, reporting that only a single cannister, UPC 681131346443, from a single batch, Lot 1E05, of the Equate Dry Spray *Cucumber scent* was tested and found to contain benzene. (Valisure Petition at 12.) Valisure also warned against the generalizations Plaintiff is trying to make here, explaining that "there is significant batch-to-batch variation in benzene content, but many batches of body spray contain no detectible benzene and thus recalls should not overly burden the distribution chain or impact the availability of body spray for use by the public." (*Id.* at 18 (emphasis added).) Valisure also explained that:

- Samples from different batches of the same product with the same scent had different results. (*See, e.g.*, *id.* at 14, 17 (reporting Power Stick, Cool Blast at .21 ppm and 0

---

[2] Although Rule 9(b) does not apply to all FDUTPA and unjust enrichment claims, it does apply when, as here, they arise from allegations of false or deceptive labels. *Begualg*, 2011 WL 4434891, at *1, 5 (dismissing FDUTPA claim based on "false and misleading advertising" after finding that "Rule 9(b) applies"); *see also Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 545 (S.D. Fla. 2013) (unjust enrichment claim "based on alleged fraudulent representations and omissions that Defendants made to induce [plaintiff] into buying" a product "subject to Rule 9(b)'s heightened pleading standards"); *Sol. Z v. Alma Lasers, Inc.*, No. 11-cv-21396, 2012 WL 13012765, at *3 (S.D. Fla. Jan. 25, 2012) ("Because [Plaintiff] alleges that Defendant 'provid[ed] deceptive advertisements['] . . . the Court finds that the FDUTPA claim sounds in fraud and the pleading standard set forth in Rule 9(b) applies."); *Llado-Carreno v. Guidant Corp.*, No. 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (FDUTPA claim that defendant "deceptively and unlawfully induc[ed] [plaintiff] to purchase" a product is governed by "[t]he particularity requirement of Rule 9(b)").

ppm); *id.* at 12, 14 (reporting Suave 24-Hour Protection, Powder Aerosol at 5.21 ppm and .97 ppm); *id.* at 12-13 (reporting Old Spice Pure Sport at 17.7 ppm, 17.4/14.1 ppm, and 3.34 ppm, and Sure Lasts All Day, Unscented at 11.1/6.41 ppm and 2.36 ppm).)

- Even samples from the *same* batch of the *same* product had different levels of benzene. (*See, e.g.*, *id.* at 12 (Lot 1E05 of Equate Dry Spray, Cucumber found to have only 3.21 ppm when tested at another facility).)

- And samples from different scents of the same product had different results, with one scent containing benzene while another scent having no benzene. (*See, e.g.*, *id.* at 13, 16 (reporting Right Guard Sport, up to 48-Hour Protection Fresh scent at 2.61 ppm, and Original scent at 0 ppm).)

Ignoring this variability, Plaintiff alleges nothing connecting her purchase to anything showing that she bought a product containing benzene. She does not allege that she bought Equate Dry Spray, Cucumber. She does not allege she bought anything from Lot 1E05. And aside from the Valisure Petition, she alleges nothing even suggesting that the unidentified cannister she claims to have bought contained benzene. (Compl. ¶ 8 (citing select Valisure testing for Equate Dry Spray, Cucumber).) But without facts connecting the Valisure testing to the unidentified product she bought nine months earlier, Plaintiff has not provided even the most basic facts needed to state a claim.

Plaintiff might point to her conclusory allegation that what she bought "was contaminated with benzene." (Compl. ¶ 34.) But this vague allegation cannot save her from dismissal. The "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *accord Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir.

2009) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) ("If the exhibits incorporated by reference contradict the general and conclusory allegations of the pleading, the exhibits govern."). This is particularly true when, as here, an incorporated exhibit refutes Plaintiff's "conclusory and speculative allegations." *Crenshaw*, 556 F.3d at 1292 (holding that where plaintiff explicitly referred to a police report in his complaint, and the content of the police report about what a police officer saw refutes the conclusory allegations on the same matter, the police report governed); *accord Griffin Indus*, 496 F.3d at 1205-06 (reversing district court's order denying defendant's motion to dismiss on equal protection claim in part because the complaint's allegation that plaintiff was similarly situated to another party was directly contradicted by exhibits attached to the complaint).

The only facts Plaintiff offers to support her vague "contamination" allegation is the Valisure Petition, and that petition contradicts her position. Again, the Valisure Petition purports to have found benzene only in one lot of one batch of one specific scent of Equate Dry Spray. (Valisure Petition at 12.) The Valisure Petition also reports that benzene levels varied by batch and scent, and that some scents contained no benzene. (*Id.* at 18.) Plaintiff does not allege that she bought the only specific Equate product that Valisure claims contained benzene. And she "has refuted h[er] own allegations by setting forth the evidence relied on to sustain them." *Gill*, 941 F.3d at 511-12. Thus, all Plaintiff's claims should be dismissed.

**B.    Plaintiff's Warranty Claims (Counts I & II) Also Fail for Lack of Pre-Suit Notice Because Notice Was Provided After Service of the Complaint.**

To bring express or implied warranty claim, "a buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *accord Dunham-Bush, Inc. v. Thermo-Air Serv.*,

*Inc.*, 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977) (holding pre-suit notice requirement in Fla. Stat. § 672.607(3)(a) is an element of a breach of warranty claim); *see also Armadillo Distrib. Enters. v. Hai Yun Musical Instruments Mfr. Co., Ltd.*, 142 F. Supp. 3d 1245, 1254 (M.D. Fla. 2015) (holding pre-suit notice essential to a breach of implied warranty claim); *Jovine*, 795 F. Supp. 2d at 1339-40 (notice is an element of express warranty claims). "Failure to provide such notice denies parties the opportunity to avoid litigation by allowing sellers to cure alleged breaches and mitigate damages before a lawsuit is filed." *Willard v. Home Depot, U.S.A., Inc.*, No. 5:09-cv-110/RS-MD, 2009 WL 4730644, at *2 (N.D. Fla. Dec. 7, 2009) (citing *In re Holistic Services Corp.*, 29 B.R. 509, 512 (Bankr. S.D. Fla. 1983) (holding buyer failed to provide notice to seller of alleged breach as required by Fla. Stat. § 672.607(3)(a)).

Plaintiff filed this action on November 23, 2021. She alleges she sent a pre-suit notice letter on November 15, 2021, attaching a "true and correct" as Exhibit 1. (Compl. ¶¶ 54, 65.) But the "true and correct" copy is dated November 23, 2021, the same day Plaintiff filed suit. (*See* Compl. Ex. 1.) And this exhibit trumps Plaintiff's contradictory allegation that she provided pre-suit notice. *See Crenshaw*, 556 F.3d at 1292 ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Griffin Indus.*, 496 F.3d at 1205-06 ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern[.]").[3] Thus, Counts I and II fail because Plaintiff did not provide the required pre-suit notice.

---

[3] Moreover, Exhibit 1 was delivered to Walmart on December 1, 2021, more than a week after suit was filed and a week after Walmart was served with the Complaint.

**C.     The FDUTPA Claim Fails Because Plaintiff Has Not Alleged Facts Showing that Walmart Engaged in a Deceptive or Unfair Act or that the Equate Body Spray is Adulterated.**

Count III alleges a violation of FDUTPA under two theories: 1) the label is deceptive and unfair, and 2) there is a per se violation because Walmart purportedly violated the FDCA, 21 U.S.C §§ 351, 352. (Compl. ¶¶ 70-71.) Both theories fail to state any claim.

1.  *The Complaint Fails to Plead Facts to Show a Deceptive or Unfair Act*

Plaintiff's deception claim is based on the allegation that Walmart had a duty to disclose that one scent of one lot of Equate Dry Spray, Cucumber, allegedly contained benzene. (Compl. ¶¶ 73-74.)[4] But before there could be any duty to disclose, Plaintiff must show that Walmart knew about the information it supposedly failed to disclose. *See Matthews v. Am. Honda Motor Co*., 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a material defect that diminishes a product's value."). "Conclusory allegations [of knowledge] are no substitute for such knowledge." *Lewis v. Mercedes-Benz U.S.*, 530 F. Supp. 3d 1183, 1221 (S.D. Fla. 2021). In *Lewis*, for example, plaintiff alleged a FDUTPA claim based on a car defect, claiming defendant had knowledge because it performed testing and thus was aware of the defect. *Id.* at 1220-21. Rejecting these allegations, the court explained that a plaintiff cannot allege knowledge simply by alleging that there was testing:

> [T]he assertions regarding testing, reports, data, and analyses do not elaborate whatsoever as to what that information actually showed, which means such allegations do not make it more plausible that Defendants knew the AHR defect

---

[4] Plaintiff alleges Walmart's "conduct includes representing that the Products contained only the ingredients listed in the label, which is untrue[.]" (Compl. ¶ 73.) Yet Plaintiff fails to point to any specific affirmative representation they allege is false. And the conclusory allegations about "misrepresentations" do not satisfy Rule 9(b). *See Begualg Inv. Mgmt*, 2011 WL 4434891 at *4 (dismissing FDUTPA claim where "[p]laintiffs have not detailed the required who, what, where, when, how of the allegedly false and misleading advertising").

existed in hundreds of thousands of vehicles. These allegations are precisely the kind of conclusory allegations that *Iqbal* and *Twombly* caution courts to disregard. . . .
In order for testing allegations to carry some weight, they cannot—as they do here—simply allege that testing was completed and showed a defect.

*Id.*

Like *Lewis*, Plaintiff has not alleged facts showing pre-sale knowledge. Instead, she provides the threadbare assertion that "Defendant knowingly, or at least negligently, introduced, contaminated, adulterated, and/or misbranded Products containing dangerous amounts of benzene into the U.S. market." (Compl. ¶ 22.) But this is the quintessential "conclusory allegation," and if anything, the negligence allegation contradicts Plaintiff's assertion that Walmart "knowingly" did anything. *See Lewis*, 530 F. Supp. 3d at 1221 (dismissing FDUTPA claim based on threadbare allegation that defendant knew of defect based on testing, with nothing more).

2. *The Complaint Fails to Show the Product Was "Adulterated."*

Section 351 provides a specific and limited definition of "adulterated," explaining that "[a] drug or device shall be deemed to be adulterated" when:

[I]t is a drug and the methods used in, or the facilities or controls used for, its manufacture, processing, packing, or holding do not conform to or are not operated or administered in conformity with current good manufacturing practice to assure that such drug meets the requirements of this Act [21 USCS §§ 301 et seq.] as to safety and has the identity and strength, and meets the quality and purity characteristics, which it purports or is represented to possess[.]

21 U.S.C. § 351(a)(2)(B).[5] "For purposes of paragraph (a)(2)(B), the term "current good manufacturing practice" includes the implementation of oversight and controls over the manufacture of drugs to ensure quality, including managing the risk of and establishing the safety

---

[5] The mere presence of benzene in a drug alone does not render a product "adulterated" under the statute. *See generally* 21 U.S.C. § 351.

of raw materials, materials used in the manufacturing of drugs, and finished drug products." *Id.* § 351.

To be certain, Walmart does not manufacture Equate Dry Spray. But Plaintiff has alleged Walmart manufactured the product (Compl. ¶ 1), so for the purpose of this Motion, the court must accept that fact as true. Even assuming Walmart did manufacture Equate Dry Spray, Plaintiff does not allege facts showing that the "facilities and controls" where the Products were manufactured "did not conform or are not operated or administered in conformity with current good manufacturing practices." Instead, she cites and quotes the cGMP provisions (Compl. ¶¶ 13-18), with no facts:

| Plaintiff's Allegation | Legal Standard |
|---|---|
| "21 C.F.R. § 210.l(a) states that the cGMPs establish 'minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and Purity characteristics that it purports or is represented to possess.' In other words, entities at all phases of the design, manufacture, and distribution chain are bound by these requirements." (Compl. ¶ 13.) | "(a) The regulations set forth in this part and in parts 211, 225, and 226 of this chapter contain the minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess." 21 C.F.R. § 210.1(a) |
| "FDA regulations require a drug product manufacturer to have 'written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity she [sic] purport or are represented to possess.' 21 C.F.R. § 211.100." (Compl. ¶ 16) | "There shall be written procedures for production and process control designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess. Such procedures shall include all requirements in this subpart. These written procedures, including any changes, shall be drafted, reviewed, and approved by the appropriate organizational units and reviewed and approved by the quality control unit." 21 C.F.R. § 211.100(a) |

| | |
|---|---|
| "'Laboratory records shall include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays" and a "statement of the results of tests and how the results compare with established standards of identity, strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested.' 21 C.F.R. § 211.194 ." (Compl. ¶ 18.) | "(a) Laboratory records shall include complete data derived from all tests necessary to assure compliance with established specifications and standards, including examinations and assays, as follows: . . . (6) A statement of the results of tests and how the results compare with established standards of identity, strength, quality, and purity for the component, drug product container, closure, in-process material, or drug product tested." 21 C.F.R. § 211.194(a). |

Plaintiff cannot state an "adulteration" claim by repeating the legal standards and concluding that Walmart did not comply. *See Torres v. Fla. Dep't of Corr.,* No. 4:15CV464-RH/CAS, 2017 WL 9439165, at \*4 n.7 (N.D. Fla. Aug. 16, 2017), report and recommendation adopted, 2017 WL 4031462 (Sept. 11, 2017), *aff'd*, 742 F. App'x 403 (11th Cir. 2018) ("Mr. Torres quotes from case law within his affidavit. Such quotations are not factual declarations, they are not supported by facts specific or relevant to Mr. Torres."). And she offers no facts showing: (i) the manufacturing practices used for *any* Equate Dry Spray product; (ii) how those practices deviated from the "minimum current good manufacturing practices"; or (iii) how any deviation resulted in benzene contamination for her product. Her allegations are circular and conclusory, and thus she had not plausibly alleged she bought an "adulterated" product as defined by the FDCA.

> **D.    Plaintiff Fails to Allege Facts Showing Walmart Knew About Benzene and Intended to Induce Plaintiff to Buy by Omitting It from the List of Ingredients.**

For her fraud claim (Count IV), Plaintiff must allege particularized facts showing: "the representor's knowledge that the representation is false[] and [] an intention that the representation induce another to act on it[.]" *Butler*, 44 So. 3d at 105; *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) ("to prove fraud, a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental

reliance by the plaintiff."). This claim fails because Plaintiff does not allege particularized facts

showing Walmart knowingly omitted benzene from the label.

> Plaintiff tries to allege knowledge by offering only threadbare recitals and conclusions:

> Defendant knew or should have known that the Products were contaminated with
> benzene, but continued to manufacture them nonetheless. Defendant was required
> to engage in impurity testing to ensure that harmful impurities such as benzene were
> not present in the Products. Had Defendant undertaken proper testing measures, it
> would have been aware that the Products contained dangerously high levels of
> benzene.

(Compl. ¶ 84.) As a threshold issue, Plaintiff's "should have known" allegations do not support

(and, if anything, contradict) the "deliberate and knowing" requirement. *See First Interstate Dev.*

*Corp.*, 511 So. 2d at 539. And Plaintiff offers nothing showing Walmart was aware Plaintiff's

product contained benzene at any time, let alone before she bought it. Her allegation that

"Defendant knew or should have known that the Products were contaminated with benzene" is an

impermissible threadbare allegation. *See Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 920

(11th Cir. 2012) (applying Florida law) (affirming dismissal of fraud claim where defendant pled

"bare allegations" that "Defendant made misrepresentations . . . when it specifically knew that the

representations as [they] pertain to the Plaintiff's income [were] false"). And she offers nothing

else to satisfy the "deliberate and knowing" requirement. *See Herengracht Grp. LLC v. WM.*

*Wrigley Jr. Co.*, No. 10-21784-CIV, 2010 WL 8531466, at *6 (S.D. Fla. Sept. 17, 2010)

(dismissing federal mismarking claim because plaintiff insufficiently pled fraudulent intent to

deceive where it pled defendant "knew[] or should have known" that patent expired).

### E. The Unjust Enrichment Claim (Count V) Fails Because Plaintiff Alleges an Adequate Legal Remedy.

The unjust enrichment claim should be dismissed because it is based on the same

allegations as the express warranty and FDUTPA claims. "Unjust enrichment is an equitable

doctrine" that is "not available where there is an adequate legal remedy." *Guerrero*, 889 F. Supp.

2d at 1356 (quoting *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005)). When an unjust enrichment claim is based on the same allegations underlying a FDUTPA claim or an express warranty claim, it must be dismissed because plaintiff has an adequate statutory remedy. *Id.*; *see also David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) (dismissing unjust enrichment claim where plaintiff had an adequate remedy at law through an express warranty claim). This is true even if the legal claim is deficient. *See id.* at 1357 ("[I]f Plaintiff cannot prevail on her FDUTPA claim, she cannot prevail on her unjust enrichment claim.").

Plaintiff's unjust enrichment claim is based on paying for a product that is "unfit for human use[.]" (Compl. ¶ 94.) Plaintiff provides no other allegations in support, but merely incorporates the prior allegations by reference. (Compl. ¶ 90.) Thus, the unjust enrichment claim is based on the same allegations offers for the FDUTPA and warranty claims, which seek money damages. Thus, Plaintiff's own allegations shows she has an adequate legal remedy, and her unjust enrichment claim should be dismissed.

## II.    THE NATIONWIDE CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN BECAUSE PLAINTIFF LACKS STANDING TO BRING CLAIMS UNDER THE LAWS OF 49 OTHER STATES.

"Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). This individual injury requirement is not met by alleging "that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). And the Supreme Court has explained that standing is a necessary component of class litigation:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other,

> unidentified members of the class to which they belong and which they purport to represent."

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)).

"A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise." *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) (citing *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010)). And Plaintiff "cannot rely on unidentified persons within those states [whose law the named plaintiffs were asserting] to state a claim for relief. Class allegations that others suffered injuries giving rise to claims add . . . nothing to the question of standing." *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at 1371 (internal quotation omitted). For this reason, courts in this district routinely dismiss or strike nationwide or multi-state class allegations based on state law. *See, e.g.*, *Lewis*, 530 F. Supp. 3d at 1205 (S.D. Fla. 2021) ("Because Plaintiffs are residents of only four states, do not claim a legal injury in any state besides their home state, and do not allege an injury that arises under the laws of any other state, they each lack standing to represent a nationwide class on this claim."); *Puhalla v. Mercedes-Benz USA, LLC (In re Takata Airbag Prods. Liab. Litig.)*, 462 F. Supp. 3d 1304, 1335 (S.D. Fla. 2020) (holding plaintiffs cannot state a nationwide-class claim under the Magnuson-Moss Warranty Act where they did not have injuries in every state); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1181 (S.D. Fla. 2019) ("named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises."); *Sanchez-Knutson v. Ford Motor Co.,* No. 14-61344-CIV, 2015 WL 11197772, at *2 (S.D. Fla. July 22, 2015) (dismissing nationwide class

based on state law for lack of standing); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at 1371-72 (dismissing claims based on the laws of ten other states where no plaintiff "suffered an injury giving rise" to a claim in any one of those states).

Plaintiff is a Florida resident who allegedly suffered an injury in Florida when she bought a product in Florida. These allegations show she did not suffer any injury giving rise to warranty, fraud, or unjust enrichment claims under the law of any state other than Florida. Thus, Plaintiff lacks standing to assert Counts I, II, IV, and V on a nationwide basis.[6] *See, e.g.*, *Lewis*, 530 F. Supp. 3d at 1205; *Puhalla*, 462 F. Supp. 3d at 1335; *Sanchez-Knutson*, 2015 WL 11197772, at *2. And the Court should dismiss or strike the nationwide class allegations for lack of standing.

<u>CONCLUSION</u>

Plaintiff's entire case rests on the notion that, in February 2021, she bought a product with benzene. Yet she does not provide facts identifying what she bought, fails to provide facts showing she bought a product containing benzene, and the Petition she cites undercuts her attempts to generalize. Thus, Plaintiff has not alleged even the most basic facts required to state a claim. And this is not the only deficiency. She failed to give pre-suit notice. She fails to allege facts showing Walmart knew the product she bought contained benzene. And she simply re-hashes the Code of Federal Regulations, rather than allege facts showing adulteration. Her unjust enrichment claim is barred because she alleged adequate legal remedies. And even if she could state a claim, her nationwide class allegations fail because she lacks standing to assert a claim under the law of any state other than Florida.

---

[6] Count III is only pled on behalf of a Florida subclass.

Dated: January 10, 2022

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue
Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717


By: */s/ Mark a. Salky*
 Mark A. Salky
 Florida Bar No. 58221
 salkym@gtlaw.com
 burkek@gtlaw.com
 FLService@gtlaw.com

 *Attorneys for Defendant Walmart Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of January, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/ Mark A. Salky_
MARK A. SALKY